ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

PAULINO GOMEZ-BETANCOURT,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil No. 3:24-CV-2804-L

Criminal No. 3:19-CR-371-L-1

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 1 0 2026

CLERK, U.S. DISTRICT COURT
By _____ KCF _____
Deputy

## RULE 60(B)(6) MOTION FOR RELIEF FROM JUDGMENT

(Challenging Procedural Dismissal only)

I.    INTRODUCTION

Movant, Paulino Gomez-Betancourt, respectfully moves for relief from the Court's January 30, 2025 Memorandum Opinion and Order pursuant to Federal Rule of Civil Procedure 60(b)(6). This motion does not challenge the underlying conviction or sentence, nor does it assert any new substantive ground for relief. Instead, it challenges the Court's procedural ruling dismissing Movant's motion under 28 U.S.C. § 2255 as untimely and denying

1

equitable tolling without accounting for the continuous sequence of circumstances that operated together to prevent timely filing.

This motion is filed within a reasonable time under Rule 60(c)(1). The judgment dismissing Movant's § 2255 motion was entered on January 30, 2025, and the Fifth Circuit denied a certificate of appealability and issued its mandate on November 3, 2025. Movant submits this Rule 60(b)(6) motion within months of the conclusion of that appellate process.

This motion is directed to a defect in the integrity of the prior § 2255 proceeding, consistent with *Gonzalez v. Crosby*, 545 U.S. 524 (2005). The § 2255 motion was dismissed on statute-of-limitations grounds, and no court has addressed the merits of Movant's ineffective-assistance claims, which appellate counsel identified in his Anders brief in No. 21-11188 as matters outside the record and more appropriately raised on collateral review. Movant does not seek to relitigate any claim previously resolved on the merits and does not rely on an intervening change in substantive law. Under *Gonzalez*, this Rule 60(b) motion properly challenges a procedural defect in the prior proceeding and does not constitute a second or successive § 2255 motion requiring authorization under 28 U.S.C. § 2244(b).

II.    ARGUMENT

A. This Rule 60(b)(6) Motion Targets Only the Procedural Timeliness Ruling, Not the Conviction or Sentence

Rule 60(b)(6) authorizes relief from a final judgment for "any other reason that justifies relief," but only in extraordinary circumstances and within a reasonable time. In the habeas context, a Rule 60(b) motion is not second or successive when it attacks, not the substance of the federal

court's resolution of a claim on the merits, but a defect in the integrity of the federal habeas proceeding. Gonzalez, 545 U.S. at 532.

Here, the Court's January 30, 2025 Order dismissed Movant's § 2255 motion as untimely under § 2255(f)(1), concluding that the one-year limitations period expired on December 12, 2023, and that Movant's filing – deemed filed no earlier than October 26, 2024 under the mailbox rule – was time-barred absent equitable tolling. The Court further held that Movant failed to establish equitable tolling or satisfy the actual-innocence gateway under *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

Movant does not challenge those legal standards; he challenges the manner in which those standards were applied to his particular factual circumstances. Specifically, the order treated the period following December 22, 2022 as a nearly two-year gap attributable to lack of diligence, without fully considering whether the same conditions that caused his certiorari effort to fail continued to prevent timely filing. That characterization constitutes a defect in the equitable-tolling analysis, not a disagreement with any merits determination.

B. Holland Requires a Diligence Inquiry That Accounts for Continuing Barriers

The Court correctly cited *Holland v. Florida*, 560 U.S. 631, 649 (2010), for the standard that a habeas litigant must show that he was pursuing his rights diligently and that some extraordinary circumstance stood in his way and prevented timely filing. The Court also correctly noted that equitable tolling is "an extraordinary remedy," applied "restrictively only in rare and exceptional circumstances," with the burden on the movant.

The defect lies not in the rule, but in its application. The order acknowledged Movant's detailed account of: (1) attempting to pursue certiorari but misdirecting his filing to the Fifth Circuit; (2) not timely receiving critical correspondence; (3) writing to the Federal Public Defender; (4) receiving counsel's response only on December 7, 2022, days before the deadline; and (5) mailing a pro se certiorari petition that the Supreme Court did not receive until December 22, 2022. Yet the order effectively treated these facts as concluding with the late arrival of the certiorari petition and, from that point, characterized the nearly two-year period that followed as inaction attributable solely to Movant.

*Holland* makes clear that equitable tolling turns on a "fact-intensive" inquiry into the totality of the circumstances and the movant's diligence "both before and after" the extraordinary obstacle. Fifth Circuit authority similarly requires courts to consider whether the same barrier that caused the initial delay continued to impede filing during the limitations period, rather than isolating a single date and then attributing all later delay to the prisoner's neglect. By effectively "cutting off" the analysis at December 22, 2022, and treating everything thereafter as ordinary delay, the Court did not fully evaluate whether the ongoing lack of legal guidance, language-related comprehension limitations, and institutional obstacles remained operative and disabling.

C. The Record Reflects a Continuous Chain of Extraordinary Circumstances, Not Ordinary Neglect

The January 30, 2025 order correctly recited that "neither excusable neglect nor ignorance of the law is sufficient to justify equitable tolling," and that "lack of legal acumen and unfamiliarity with the legal process are not sufficient justification." Movant does not dispute those principles.

He is not relying on simple lack of legal knowledge. Instead, he challenges the conclusion that his circumstances are ordinary examples of that category.

The record – including Movant's § 2255 motion, his response regarding limitations, and supporting correspondence – shows:

Post-Appeal Misguidance and Misdirected Certiorari Filing.

After the Fifth Circuit dismissed his appeal as frivolous on September 12, 2022, Movant attempted to seek certiorari but sent his filing to the Fifth Circuit rather than directly to the Supreme Court. That misstep is consistent with a non-English-speaking, legally unsophisticated prisoner acting without meaningful guidance in a highly technical procedural environment. The Fifth Circuit docketed his pro se submission and indicated it should have been directed to the Supreme Court, but, as Movant has consistently explained, he did not receive that correspondence in time to correct his mistake because of unreliable prison mail.

Delayed and Failed Legal Communications.

Movant wrote to the Federal Public Defender on October 15, 2022, asking for help with certiorari. The FPD responded in Spanish on November 8, 2022, enclosing another copy of a prior September 13, 2022 Spanish letter that explained his right to seek certiorari by December 12, 2022 and to file a § 2255 motion within one year of that date. Because of prison mail delays, Movant did not receive the November 8 letter and attachments until around December 7, 2022, leaving him only a few days to act. Despite this, he prepared and mailed a pro se certiorari petition on December 9, 2022; the Supreme Court did not receive it until December 22, 2022 – ten days after the deadline – due to mail delay.

5

English-Only Legal Materials and Language Barriers.

Inside FCI Big Spring, all core legal materials and forms – including the § 2255 packet Movant ultimately filed – are in English. Movant has only approximately a second-grade education from Mexico, Spanish is his first language, and he cannot read or understand legal English without help. He depended on sporadic assistance from other prisoners and on the FPD's Spanish letters to learn that certiorari and § 2255 relief even existed, and he still could not independently calculate deadlines or draft a § 2255 petition based on extra-record ineffective-assistance claims.

Continuing Lack of Legal Capacity After December 2022.

The order emphasizes that Movant "knew" by December 22, 2022 that his certiorari petition was untimely and then "waited nearly two years" to mail his § 2255 motion, even managing to file another motion (requesting counsel to assist with an Amendment 821 two-point reduction) during that period. But knowledge that a filing arrived late is not equivalent to possessing the legal capacity to identify the correct next step (a § 2255 motion), calculate a separate limitations period, draft a complex ineffective-assistance pleading in English, and navigate federal post-conviction procedure pro se. His intervening motion for counsel in June 2024 is consistent with a litigant trying, unsuccessfully, to obtain assistance precisely because he lacked that capacity.

Anders Recognition of Extra-Record Ineffective-Assistance Claims Reserved for Collateral Review.

In the Anders brief filed in No. 21-11188, appellate counsel acknowledged that Movant's complaints about trial counsel sounded in ineffective assistance and could not be resolved on direct appeal because the record was undeveloped as to counsel's strategy, motives, and

6

investigation. Those concerns were flagged during direct review and expressly deferred to collateral review under 28 U.S.C. § 2255 – yet the collateral proceeding ended at the limitations stage before any court examined them on the merits.

Taken together, these circumstances show a continuous sequence of interlocking failures, not a simple failure to act. Movant's limited formal education, language-related comprehension limitations, dependence on counsel for basic procedural orientation, delayed and failed communications, English-only legal materials, and prison mail delays combined to create a structural inability to comply with § 2255(f), despite repeated effort. An interpreter can facilitate basic communication at discrete court events, but it does not confer legal understanding of collateral remedies or deadlines. The mere presence of counsel earlier in the case does not establish effective assistance where the record reveals no preserved basis for review and where Anders itself confirms that issues were left for collateral litigation that Movant could not realistically initiate on his own.

D. The Prior Order's Diligence Finding Misapprehends the Nature of Movant's Efforts

The order concluded that Movant "was not diligent in pursuing his habeas rights during the one-year period" because he knew of the late certiorari filing by December 22, 2022 and still "waited nearly two years" to submit his § 2255 motion. It also relied on his ability to file a separate motion as evidence that he possessed sufficient capacity to litigate.

That reasoning conflates minimal functional literacy with the ability to navigate complex federal habeas procedure. Pro se filings can coexist with a lack of capacity to understand and meet AEDPA's technical requirements, particularly when the prisoner is non-English-speaking,

incarcerated, and dependent on delayed prison mail and sporadic assistance. A single, narrow motion for appointment of counsel on a sentencing-amendment issue, prepared with whatever help was available, does not demonstrate the capacity to identify, research, and timely assert multi-ground ineffective-assistance claims in a § 2255 motion.

The question under *Holland* is not whether Movant was perfectly diligent at every moment, but whether he pursued his rights "with reasonable diligence" in light of the extraordinary circumstances he faced. 560 U.S. at 653. The record shows that he:

- sought to extend direct review via certiorari, albeit in a procedurally flawed way;
- wrote to the Federal Public Defender for help;
- acted promptly upon finally receiving counsel's late November 8 letter around December 7, 2022; and
- continued seeking assistance, including by moving for appointed counsel in June 2024, during the period the Court later treated as unexplained delay.

Viewed cumulatively and in context, these efforts are consistent with *Holland*'s "reasonable diligence" standard, especially for a non-English-speaking prisoner with limited education. The defect in the prior ruling is that it treated post-December 2022 time passage alone as dispositive, without fully integrating Movant's continuing incapacity into the diligence analysis.

E. This Is a Proper, Narrow Use of Rule 60(b)(6) to Restore the Integrity of the Habeas Proceeding

Movant recognizes that Rule 60(b)(6) is not a substitute for appeal and that relief is reserved for truly extraordinary situations. He does not ask the Court to adjudicate his ineffective-assistance

claims now. Instead, he asks the Court to correct a defect in the equitable-tolling analysis that prevented those previously-identified, extra-record claims from ever being heard on the merits.

Unlike the petitioner in *Gonzalez*, Movant does not rely on an intervening change in law or seek to revisit a claim already decided on the merits. His argument is confined to the procedural integrity of the limitations ruling in this case, which treated ongoing structural barriers as if they were ordinary neglect and thereby cut off the only forum identified during the appellate process for meaningful review of his counsel-ineffectiveness allegations.

In these circumstances, where (1) no court has ever adjudicated Movant's ineffective-assistance claims; (2) those claims were expressly reserved for collateral review; and (3) the collateral proceeding was dismissed at the threshold based on a timeliness analysis that did not fully account for continuous, documented barriers, Rule 60(b)(6) provides a narrow but appropriate avenue to restore the integrity of the habeas process.

## III. CONCLUSION

For the foregoing reasons, Movant respectfully submits that the January 30, 2025 judgment dismissing his § 2255 motion as untimely rests on a procedural defect in the equitable-tolling analysis. The Court did not fully consider the cumulative and continuing effect of the documented barriers that prevented timely filing, instead treating Movant's circumstances as ordinary delay. Because the prior § 2255 motion was dismissed without reaching the merits, and because this motion challenges only the integrity of that dismissal under *Gonzalez*, it is properly brought under Rule 60(b)(6) and does not constitute a second or successive petition.

Movant respectfully requests that the Court:

1. Grant relief under Federal Rule of Civil Procedure 60(b)(6);

2. Vacate the January 30, 2025 Memorandum Opinion and Order dismissing his § 2255 motion as untimely; and

3. Reopen the § 2255 proceeding for consideration of Movant's claims on the merits.

Respectfully submitted,

*Paulino Gomez-B.*

Paulino Gomez-Betancourt

Reg. No. 69241-065

1900 Simler Avenue

Big Spring, TX 79720

**Exhibits:**

- Exhibit A: July 21, 2024 Spanish letter (with English translation).
- Exhibit B: Fifth Circuit clerk correspondence and mailing records regarding misdirected certiorari petition and Supreme Court filing.
- Exhibit C: Declaration of Paulino Gomez-Betancourt under 28 U.S.C. § 1746.

10

**Certificate of Service**

I certify that on or about April 06, 2026, I placed this Rule 60(b)(6) motion in the prison mailing system, postage prepaid, addressed to:

Clerk of Court

United States District Court

Northern District of Texas, Dallas Division

1100 Commerce Street, Room 1452

Dallas, TX 75242

and to:

United States Attorney's Office

1100 Commerce Street, 3rd Floor

Dallas, TX 75242

I declare under penalty of perjury that the foregoing is true and correct.

*Paulino Gomez-B.*

Paulino Gomez-Betancourt

Date: April 06, 2026

11

EXHIBIT A

July 21, 2024 Handwritten letter in Spanish from Paulino Gomez-Betancourt (Movant) sent to

Legal Aide *(Name Redacted),* with English translation, in which he describes in his own simple

words his education, language limitations, understanding of the case, and what his lawyers did

and did not explain to him.



me dieron 2 puntos por la casa 2 puntos porque
yo traia la droga de mexico y en Felonias me-
dieron 2 puntos por mi primer Arresto en 2001
y la Abogada Gabriela Vega me Avia dicho
que ella me iva A peliar esos puntos porque
ya tenia mas de 15 Años y que esos puntos
ya no contaban y los otros puntos en el nibel —
de Sentensia me los iva A peliar porque la Casa
no estaba Ami nombre y yo no traia la droga de
mexico y esa Abogada que me pusieron no Sava
nada de eso la señorita Vega estaba enbarasada
iva atener su Bebe y yo le dige que yo la esperab
Para que ella me Representara en mi Sentencia
y me diso que estaba bien que como para —
Febrero o marso me ivan A Sentenciar y nomas
derrepente me llaman que tenia corte y era esa nueba
Abogada que me Avian puesto y que iva A ir A-
berme en dos Semanas Para ber como estaba mi
Caso y nunca Fue Para ese entonses faltaban
6 semanas Para mi Sentencia ~~era~~ yo tenia la corte
Para el 15 de Noviembre y ese Dia me sentenciaron
y yo tonto que no supe que podia negarme A que
no me Sentenciaran ese Dia con esa Abogada
porque nunca Fue Aberme y no Avia Ablado nada
Con ella de mi caso no sabia nada de como
me Avian Arrestado que Ami me Arrestaron-
caminando tendo Ala tienda que yo no benia en
esa enbestigacion que Ami no me Agarraron dreogas
ensima que Ami no me estaban buscando nada Sovia ella
la Abogada Vega me Avia dicho que si yo na uviera
Tenido Recor de droga Avia Caso Para irnos A-
Juicio porque la DEA Isleron muchos errores
con mi Arresto poreso me iva Apeliar de 10 años Aunba
de Ante muchas gracias señorita.

*Page 1 – Spanish (verbatim)*

7-21-24 con todo ResPeto me dirijo A usted señorita *(Legal Aide Name Redacted)* Para esPlicarle un Poco de mi caso Por el Cual quiero meter la 2255 Por que esa- Abogada no savia. na de mi caso faltaban 6 semanas Para mi sentencia cuando me dijo que Ella era mi abogada y que iva A ir Avisita Para ber como iva A peliar mi casa y nunca me Visito asta el Dia de la sentencia – La mire y no savia nada de mi caso La – señorita Vega que era mi Abogada antes que- Ella me Avia dicho que me iva A peliar de 10 Años Parabajo o un maximo de 12 Años Por que yo ni siquiera benia en la enbestigasion no traian nada de mi nomas ese Dia me Vieron salir de esa casa pero me agarraron lejos de la casa y me Paro la DEA iva A la tienda caminando Por que ni carro tenia Alli me Arresto y me quito mi telefono mi cartera y me encontro una yabe de la casa y me yevaron Para tras Para esa casa y me tomaron una Foto en Frente de la casa es todo lo que biene en- esa enbestigasion no traian na ni llamadas mias con nadie me dijo el de la DEA que- ni savian que yo vivia en esa casa que nunca me Avian bisto Ayi que ellos buscaban A otras personas y me enseño las Fotos Pero que no me podia dejar ir Porque Avia mucha droga en- esa casa la casa estaba Anombre de la mujer que andaban siguiendo los biles todo estaba – A su nombre La vieja se yama Teresa Franco y ella era la encargada de todo y cuando La agarraron me echo toda la bronca Ami que yo le daba la droga Para que la bendiera –

*Page 2 – Spanish (verbatim)* me dieron 2 Puntos Por la casa 2 Puntos Porque yo traia la droga de mexico y en Felonias me- dieron 2 Puntos Por mi Primer Arresto en 2001 y la Abogada Gabriela Vega me Avia dicho que ella me iva A Peliar esos Puntos Por que ya tenian mas de 15 Años y que esos Puntos ya no contaban y los otros Puntos en el nibel de sentensia me los iva A Peliar Por que la casa no estaba Ami nombre y yo no traia la droga de- mexico y esa Abogada que me Pusieron no sava nada de eso la señorita Vega estaba enbarasada iva atener su Bebe y yo

le dige que yo la esperaba Para que ella me Representara en mi sentencia y me diso que estaba bien que como para – Febrero o marso me ivan A sentenciar y nomas derrepente me llaman que tenia corte y era esa nueba Abogada que me Avian puesto y que iva A ir A- berme en dos semanas Para ber como estaba mi- caso y nunca Fue Para ese entonses faltaban 6 semanas para mi sentencia yo tenia la corte Para el 15 de Noviembre y ese Dia me sentenciaron y yo tonto que no supe que podia negarme A que no me sentenciaran ese Dia con esa Abogada Porque nunca Fue Aberme y no Avia Ablado nada con ella de mi caso no sabia nada de como me Avian Arrestado que Ami me Arrestaron- caminando yendo Ala tienda que yo no benia en esa enbestigacion que Ami no me Agarraron droga ensima que Ami no me estaban buscan do nada savia ella La Abogada Vega me Avia dicho que si yo no uviera tenido Recor de droga Avia caso para irnos A- Juicio Por que la DEA isieron muchos errores con mi Arresto poreso me iva APeliar de 10 Años Parabajo de Ante mano muchas gracias señorita *(Legal Aide Name Redacted).*

### *Page 1 – English translation*

With all respect I write to you, Miss *(Name Redacted)*, to explain a little about my case and why I want to file the 2255, because that lawyer didn't know anything about my case. There were 6 weeks left before my sentencing when she told me that she was my lawyer and that she was going to come visit to see how she was going to fight my case, and she never visited me until the day of sentencing. I saw her and she didn't know anything about my case.

Miss Vega, who was my lawyer before her, had told me that she was going to fight to get me 10 years or less, or a maximum of 12 years, because I wasn't even in the investigation. They didn't have anything on me. That day they only saw me leaving that house, but they grabbed me far from the house and DEA stopped me. I was walking to the store because I didn't even have a car

there. That's where they arrested me and took my phone and my wallet and found a key to the house, and they took me back to that house and took a photo of me in front of the house. That is everything that is in that investigation. They had nothing, not even calls from me with anyone. The DEA agent told me they didn't even know I lived in that house, that they had never seen me there, that they were looking for other people, and he showed me the photos, but he said he couldn't let me go because there was a lot of drugs in that house.

The house was in the name of the woman they were following; all the bills were in her name. The lady's name is Teresa Franco, and she was in charge of everything, and when they arrested her, she threw all the blame on me, saying that I gave her the drugs for her to sell.

### *Page 2 – English Translation*

They gave me 2 points for the house, 2 points because I brought the drugs from Mexico, and for felonies they gave me 2 points for my first arrest in 2001, and lawyer Gabriela Vega had told me that she was going to fight those points because they were more than 15 years old and those points no longer counted. And the other points in the sentencing level she was going to fight because the house was not in my name and I did not bring the drugs from Mexico.

And that lawyer they put on my case didn't know anything about that. Miss Vega was pregnant and was going to have her baby, and I told her that I would wait for her so that she could represent me at my sentencing, and she told me that was fine, that they would sentence me around February or March. And then suddenly they called me that I had court and it was that new lawyer they had put on my case and that she was going to come see me in two weeks to see how my case was, and she never came.

By then there were 6 weeks left before my sentencing. I had court on November 15 and that day they sentenced me, and I was stupid and didn't know that I could refuse to be sentenced that day with that lawyer, because she had never come to see me and I had not talked at all with her about my case. She didn't know anything about how I was arrested – that I was arrested walking, going to the store – that I was not in that investigation, that they did not catch me with drugs on me, that they were not looking for me. She knew nothing.

Lawyer Vega had told me that if I did not have a drug record there was a case to go to trial because DEA made many mistakes with my arrest; that is why she was going to fight to get me 10 years or less. In advance, many thanks, Miss *(Name Redacted)*.

**EXHIBIT B**

Certiorari efforts and mail delivery proof to the Fifth Circuit Court of Appeals and to the

Supreme Court *(attached)*

United States Court of Appeals
For the Fifth Circuit.

United States of America - Plaintiff - Appellee

Vrs.

Paulino Gomez - Betancourt - Defendant - Appellant

No. 21 - 11188
USDC No. 3:19-CR-371-1

Honorable Magistrate(s) for the United States
Court of Appeals for the fifth Circuit:

It is with all Respect that I come before
this Court with the purpose of presenting a
"Writ of Certiorari" petition, Considering and
requesting this court TO Review One more time
My case.

Based on the facts that my Case a lot
of Inconsinances which hurt/damage the entire
process of My federal case

For these reasons and Circumstances, I pray this Court to accept this petition; Please note that I am acting on My behalf as the "Defendant" of this case.

In addition, please accept the address where I am Currently Serving My Federal Sentence (FCI Big Spring - 1900 Simler Avenue - Big Spring, Texas 79720-0000) as my Notification Address.

Lastly, After your Honor has Review this case, I Request this petition to be Approved. I am writing This petition based on the principle of Universal Rights of law.

Respectfully,

Gomez Betoncourt Paulino
Federal # 69241-065.



Gomez Betancourt Paulino ID# 69241-065
FCI Big Spring
1900 Simler Avenue
Big. Spring, Tx. 79720 0000

— Mail

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT OFFICE OF THE
CLERK, F. Edward Hebert Building
600 S. Maestri Place New, Orleans,
Louisiana 70130-3408

Legal – Mail

Legal – Mail

Legal – Mail

# United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

November 04, 2022

#69241-065
Mr. Paulino Gomez Betancourt
FCI Big Spring
1900 Simler Avenue
Big Spring, TX 79720-0000

    No. 21-11188   USA v. Betancourt
                  USDC No. 3:19-CR-371-1

Dear Mr. Betancourt,

Address the enclosed to the Clerk of the U.S. Supreme Court.

                Sincerely,

                LYLE W. CAYCE, Clerk

                By: _____
                Roeshawn Johnson, Deputy Clerk
                504-310-7998

Proof of Service in US Supreme Court
mailed DEC. 9, 2022

7:57 AM                                                          USPS.com® - USPS Tracking®

# Delivered

Delivered, Individual Picked Up at Postal Facility

WASHINGTON, DC 20543

December 22, 2022, 11:24 am

**See All Tracking History**

**EXHIBIT C**

DECLARATION OF PAULINO GOMEZ-BETANCOURT

IN SUPPORT OF RULE 60(b)(6) MOTION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

PAULINO GOMEZ-BETANCOURT,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No. 3:24-CV-2804-L

Criminal No. 3:19-CR-371-L-1

DECLARATION OF PAULINO GOMEZ-BETANCOURT

IN SUPPORT OF RULE 60(b)(6) MOTION

I, Paulino Gomez-Betancourt, declare under penalty of perjury:

1. I was born in Mexico, in the state of Guerrero. Spanish is my first and only language. I went to school in Mexico only through about the second grade and never completed more education. I cannot read or write English well and I do not understand legal English without help.

2. In my criminal case, all important papers (indictment, factual resume, plea agreement, Presentence Investigation Report, etc.) had to be translated for me by interpreters or by

my lawyers. I have never been able to read federal statutes, rules, or court opinions by myself in English.

3. At my sentencing hearing on November 15, 2021, an interpreter was present to help me understand the judge. My own statements to the Court were short and simple. Through the interpreter I apologized, said I came to work, explained that I had been left in McAllen, that my family in Mexico is very poor, and that I have serious problems with my back and knees. My lawyer handled all discussion of guidelines, enhancements, and legal issues. I did not understand the guideline calculations myself and relied completely on my lawyer and the interpreter at that hearing.

4. Inside FCI Big Spring, all of the main legal materials and forms—the U.S. Code, court rules, habeas forms, and case law—are in English. The § 2255 form and instructions I eventually used are also in English. Because I only read Spanish and have very little schooling, I depend on other prisoners and on Spanish-language letters to understand what my legal options are.

5. After my direct appeal was dismissed as frivolous on September 12, 2022, my appellate lawyer, Assistant Federal Public Defender Adam Nicholson, sent me a letter in Spanish dated April 21, 2022. In that letter he told me that my complaints about my trial lawyers were best described as "ineffective assistance of counsel," that he could not raise those claims on direct appeal because the record did not contain the necessary facts, and that I would have an opportunity to raise those concerns later in a motion under 28 U.S.C. § 2255.

6. After the Fifth Circuit's decision on September 12, 2022, Mr. Nicholson's office sent me another letter in Spanish dated September 13, 2022. That letter explained that I had 90

days, until December 12, 2022, to file a petition for writ of certiorari with the United States Supreme Court, and that if I chose not to pursue certiorari, I would have one year from December 12, 2022, to file a § 2255 motion. I did not receive that September 13 letter when it was first mailed.

7. On October 15, 2022, I wrote to the Federal Public Defender asking them to help me file a petition for writ of certiorari because I did not understand how to do it myself. In a letter dated November 8, 2022, they answered me in Spanish and attached another copy of the September 13 letter. The November 8 letter said they had withdrawn from my case and could not represent me further, but that I still had the right to file a certiorari petition and a § 2255 motion on my own. Because of prison mail delays, I did not receive the November 8 letter and the attached September 13 letter until around December 7, 2022, only a few days before the December 12 deadline for certiorari.

8. Before I received the November 8 letter, I had already tried to ask the Fifth Circuit to review my case by sending a pro se "Writ of Certiorari" letter to that court. The Fifth Circuit received it on October 27, 2022 and indicated that any certiorari petition needed to be directed to the Supreme Court, not to the court of appeals. Because of the unreliable mail system at FCI Big Spring and my limited understanding, I did not receive or understand that correspondence in time to fix my mistake.

9. After I finally received the November 8 FPD letter and the copy of the September 13 letter around December 7, 2022, I tried to follow the instructions as best I could. I prepared a certiorari petition in English with the help of other inmates and mailed it from prison to the United States Supreme Court on or about December 9, 2022, before the December 12 deadline mentioned in the FPD letter. USPS tracking later showed that the

Supreme Court did not receive the petition until December 22, 2022, ten days after the deadline.

10. I did not receive any response from the Supreme Court about that petition. I knew from the tracking that the petition had been delivered late, but I did not understand what that meant for my case or my rights. No one explained to me in Spanish that I could ask for more time or that the late arrival would affect a different one-year deadline to file a § 2255 motion.

11. At that time and afterward, I did not understand that there was a separate one-year deadline under 28 U.S.C. § 2255(f) for filing a motion to vacate, or how to calculate that deadline. I only knew, in a general way from the September 13/November 8 letters, that I "had one year," but I did not understand how to count it or how the missed certiorari deadline affected it. I had no lawyer to explain this to me in Spanish or to help me draft a § 2255 motion.

12. Between December 22, 2022 and October 26, 2024, I remained in federal custody with the same limitations: second-grade education, Spanish only, and no appointed counsel. I did not understand AEDPA, the § 2255 form, or how to raise my ineffective-assistance claims, which involve facts outside the record, in English. I depended on occasional help from other inmates and limited law-library access. The law library did not have Spanish-language explanations of § 2255 or equitable tolling.

13. During this period, I continued to try to get help. For example, on June 15, 2024, I sent a letter and motion to the Court in my criminal case (No. 3:19-CR-371-L-1) asking for appointment of counsel and a two-point reduction of sentence under Amendment 821. In that motion I explained that I was indigent and requested "assistance in filing" the

motion. I felt unable to handle even that limited sentencing issue by myself, and I hoped to get a lawyer who could also help me with my other issues.

14. I did not delay my § 2255 motion on purpose. I filed it as soon as I felt I had enough help and understanding from other prisoners to fill out the English form and describe my ineffective-assistance claims. I signed and mailed my § 2255 motion on October 26, 2024. I did not know at that time that the Court would later consider it untimely under § 2255(f)(1), or that the time between December 2022 and October 2024 would be counted as a lack of diligence.

15. On the § 2255 form and in my response regarding the statute of limitations, I described the mail problems and my difficulty receiving and understanding court and FPD correspondence. Those statements were based on my experience that important letters took a long time to arrive or did not arrive at all, and that I did not know how to read or interpret them without help when they did arrive.

16. Everything I know about § 2255, equitable tolling, and Rule 60(b)(6) I have learned slowly from other inmates and by having English-language materials explained to me. I have never had a lawyer to represent me in a § 2255 proceeding or to explain these rules in Spanish. If I had clearly understood, in Spanish and in simple terms, how the one-year § 2255 deadline worked and what I needed to file, I would have tried to file my § 2255 motion earlier.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on: April 6, 2026 at FCI Big Spring, Big Spring, Texas. Paulino Gomez-Betancourt

Reg. No. 69241-065    Paulino GomezB.

RECEIVED

APR 1 0 2026

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

April 6, 2026

Clerk of Court

United States District Court

Northern District of Texas, Dallas Division

1100 Commerce Street, Room 1452

Dallas, TX 75242

Re: Gomez-Betancourt v. United States

Civil No. 3:24-CV-2804-L | Criminal No. 3:19-CR-371-L-1

Rule 60(b)(6) Motion for Relief from Judgment

Dear Clerk of Court:

Enclosed for filing in the above-referenced civil matter, please find the following documents on behalf of pro se Movant Paulino Gomez-Betancourt, Reg. No. 69241-065, currently incarcerated at FCI Big Spring, 1900 Simler Avenue, Big Spring, Texas 79720:

1. Rule 60(b)(6) Motion for Relief from Judgment (Challenging Procedural Dismissal Only);

2. Exhibit A – July 21, 2024 Handwritten Letter in Spanish from Movant to Legal Aide (Name Redacted), with English Translation;

3. Exhibit B – Pro Se Certiorari Correspondence and Mail/Delivery Records, including:

   o Pro se "Writ of Certiorari" letter received by the Fifth Circuit on October 27, 2022;

   o Fifth Circuit clerk correspondence regarding misdirected certiorari petition; and

- USPS tracking confirmation showing Supreme Court delivery on December 22, 2022;

4. Exhibit C – Declaration of Paulino Gomez-Betancourt under 28 U.S.C. § 1746 in Support of Rule 60(b)(6) Motion.

This filing is submitted pursuant to Federal Rule of Civil Procedure 60(b)(6) and does not constitute a second or successive petition under 28 U.S.C. § 2244(b). No filing fee is required for a motion in an existing case.

Movant requests that the Clerk docket these documents and assign them to the Honorable Sam A. Lindsay, as this matter is assigned to his docket.

A copy of this submission has been served on the United States Attorney's Office, Northern District of Texas, Dallas Division, 1100 Commerce Street, 3rd Floor, Dallas, Texas 75242, by U.S. mail on the same date.

Thank you for your assistance.

Respectfully submitted,

Paulino Gomez-Betancourt

Pro Se Movant

Reg. No. 69241-065

FCI Big Spring

1900 Simler Avenue Big Spring, Texas 79720

Date: April 6, 2026

**UNITED STATES POSTAL SERVICE.**

**Click-N-Ship®**

usps.com

**G**

US POSTAGE

9434 6301 0935 5132 6695 22 0074 1001 0007 5242

U.S. POSTAGE PAID

04/06/2026
1 lb 0 oz

Mailed from 77429   813085681911119

## USPS GROUND ADVANTAGE™

FCI BIG SPRING
PAULINO GOMEZ-BETANCOURT
1900 SIMLER AVE
BIG SPRING TX 79720-7789

Created 2026-04-06

RDC 01

C001

USDC NORTHERN TX DALLAS
CLERK OF COURT
1100 COMMERCE ST
DALLAS TX 75242-1001

**USPS TRACKING #**

9434 6301 0935 5132 6695 22

FedEx®

This envelope is only for FedEx Express® shipments.

You can help us get your package safely to its destination by packing your items securely. Need help? Go to fedex.com/packaging for packing tips.

Insert shipping document here.

APR 10 2026

Align top of FedEx Express® shipping label here.

RECEIVED - 2
APR 10 2026
X-RAY
MAILROOM

envelope
recycle me.

Cut on dotted line.

UNITED STATES POSTAL SERVICE®

Click-N-Ship®

usps.com
US POSTAGE

9434 6301 0935 5132 6695 22 0074 1001 0007 5242

U.S. POSTAGE PAID

Mailed from 77428   813056581911119

**G**

04/09/2026
1 lb 0 oz

**USPS GROUND ADVANTAGE™**

Created 2026-04-09

RDC 01

C001

FCI BIG SPRING
PAULINO GOMEZ-BETANCOURT
1900 SIMLER AVE
BIG SPRING TX 79720-7789

USDC NORTHERN TX DALLAS
CLERK OF COURT
1100 COMMERCE ST
DALLAS TX 75242-1001

USPS TRACKING #

9434 6301 0935 5132 6695 22